Commonwealth *v.* Streuber, Appellant.

Argued October 7, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Walter Stein,* with him *Berger and Gelman,* for appellant.

*Juanita Kidd Stout,* Assistant District Attorney, with her *James N. Lafferty, First Assistant District* Attorney, and *Victor H. Blanc,* District Attorney, for appellee.

OPINION BY GUNTHER, J., January 21, 1958:

Defendant, Peter J. Streuber, was convicted of sodomy and on this appeal he questions the sufficiency of the evidence as well as the fairness of the trial accorded him.

On April 11, 1957, defendant was a member of the crew of the Submarine U.S.S. Sirago which was then in the Philadelphia Navy Yard for repairs. On that date, defendant was on shore leave and in the course of the evening he drank freely, having visited five or six bars, with the result that he would fall asleep every time he sat down. For that reason, about 11:30 p.m., he refused an invitation from two of his shipmates to visit another bar and set out to return to the navy yard. While waiting for a street car, he realized that he was on the wrong street and while going to the right street to catch his street car, he decided to stop for a final nightcap at the Twentieth Century Club.

There he met a Charles Espinet who offered to drive him to the base. Espinet falsely told defendant that he was a civilian employee of the Navy stationed at the navy yard.

En route the defendant fell asleep but was awakened by Espinet who told him that he had to make a comfort stop. Both defendant and Espinet drove to the League Park in Philadelphia, stopped and got out of the car for that purpose. Defendant returned to the car and then fell asleep again. Later he was awakened to find Espinet had opened his trousers, was rubbing his head on his stomach and had his privates in his hand. At or about that time a park guard flashed his light upon them for a period of from five to fifteen seconds and, as a result of what the guard saw, both persons were arrested.

The Commonwealth's case consisted of the testimony of the park guard. He stated that when he flashed his light into the car, he found Charles Espinet in a leaning position down on defendant. When the officer shouted, Espinet raised his head and his mouth was partly open and his lips "were sort of in a wet foaming condition." Defendant's pants were open and his privates out and when the officer shouted, defendant placed his privates back into his trousers. Defendant was questioned by the park guard and this officer stated defendant told him he did not know what was going on; that he was drunk. This mainly was the Commonwealth's case.

Defendant took the stand and testified in his own behalf. He stated he met Espinet at the Twentieth Century Club; that after he finished his drink there Espinet offered to drive him to the base; that he got into Espinet's car and then fell asleep. After the comfort stop, he did not know when Espinet returned to the car because he fell asleep and the first time he

realized what was happening is when the park guard flashed his light upon them. He stated that he thought Espinet was also drunk. After the park guard arrived, he subsequently got out of the car because he got sick and had to "heave" and then returned to the car at the suggestion of the second park guard. The captain of the U.S.S. Sirago testified as to defendant's good reputation and when eleven others of the crew were about to be called as character witnesses, the court below stated that counsel for defendant could just note their names on the record. When an offer was made to the effect that three of his shipmates would testify that they observed defendant drinking and that he was under the influence of drinks between twelve and one o'clock on the night of the alleged offense, the court below stated: "It wouldn't influence my judgment at all."

The statute under which defendant was prosecuted, the Act of June 24, 1939, P. L. 872, section 501, 18 P.S. section 4501, reads, in part, as follows:

"Whoever carnally knows . . . any male . . . person . . . by or with the mouth, or whoever voluntarily submits to such carnal knowledge, is guilty of sodomy, a felony . . .

"Any sexual penetration, however slight, shall be sufficient to complete the offense of sodomy."

In view of the fact that the case turned on the question of whether defendant *voluntarily submitted* to the alleged act of sodomy charged, it became important for the Commonwealth to show, either directly or by circumstances, voluntary submission. On this question, the state of intoxication of the defendant was vitally important. While the Commonwealth may show the act to be voluntary and fact of penetration by circumstantial evidence (*Commonwealth v. Donahue*, 136 Pa. Superior Ct. 306, 7 A. 2d 13; *Commonwealth v. Bowes,*

166 Pa. Superior Ct. 625, 74 A. 2d 795) such circumstances must be such as to lead to some degree of certainty. What was the circumstance here to show voluntary submission? The Commonwealth contends that the position of the parties and fact that defendant had his private parts exposed is sufficient. Such evidence might be considered sufficient as to Espinet but, we believe, insufficient to show the act as voluntary on behalf of the defendant. The Commonwealth further contends defendant admitted that Espinet started to play around with his trousers, but a careful examination of the testimony does not clearly show this to be the admission of the defendant. The circumstances, in order to warrant conviction, must be such as to establish guilt, not necessarily beyond moral certainty, nor as being absolutely incompatible with innocence, but at least beyond a reasonable doubt. Such reasonable inferences of guilt must be based on facts and conditions proved and not solely on suspicion or surmise. *Commonwealth v. Giambrone,* 183 Pa. Superior Ct. 283, 130 A. 2d 254; *Commonwealth v. Gregory,* 183 Pa. Superior Ct. 53, 127 A. 2d 788.

Since this case was tried without a jury, evidence as to intoxication which might affect consent was important and the lower court's statement that such would not influence his judgment at all is reversible error. In view of such a statement the defense was not required to do something useless and submit such evidence. In passing we may add that while the trial judge may limit the number of character witnesses called to testify, this limitation cannot be applied to the calling of one witness. We have said that character testimony is substantial and positive evidence which may, of itself, create a reasonable doubt to produce an acquittal. *Commonwealth v. Goodman,* 182 Pa. Superior Ct. 205, 126 A. 2d 763.

The conviction on this record cannot stand. Judgment and sentence reversed and new trial granted.